Randolph A. Crump

v.

Virginia Electric and Power Co.

June 2, 1978

Case No. A-1001

By JUDGE MARVIN F. COLE

The plaintiff in this case is an employee of Cummins Virginia, Inc., and the defendant is the Virginia Electric and Power Company. The evidence in the case disclosed that Crump was a mechanic for Cummins and he had been sent to the Vepco plant at Dutch Gap in order to investigate a miss in an engine in a large front-bladed Hough tractor owned by Vepco. Crump had determined that the problem with the engine was one of the injectors which sprayed fuel into the engine and he was attempting to locate the injector when the accident occurred. The evidence disclosed that it would have been necessary for him to remove the injector in a specified way and would then have to correct the problem.

The evidence further disclosed that Vepco had many other vehicles owned by it in the State of Virginia and these vehicles consisted of linetrucks, tractors, and other types of equipment. However, I believe the evidence disclosed that this was the only Hough tractor that was owned by Vepco and this was one of the largest, if not the largest, piece of equipment which they had. The evidence further disclosed that at various parts of the State Vepco maintained large fleets of trucks and they had machine shops in the State and they also had full service maintenance shops throughout the State.

The evidence further discloses that at the Dutch Gap plant there were three pieces of equipment, one of which was the Hough tractor, that were used to move coal. The other two pieces of equipment were smaller than the Hough tractor. There are no mechanics at Dutch Gap but the operators of the equipment are required to do certain maintenance jobs on the equipment. The operators make minor repairs, such as replacing hydraulic hose, minor welding on the machines, and changing oil and greasing the machines. The operators would not go into an engine and remove an injector and repair the same. The evidence established the fact that this type of work would have been subbed out to some other company, such as Cummins Virginia, Inc.

The law in this instance is too clear to need repetition and has been cited many times in numerous cases. Section 65.1-29 of the Code of Virginia states that when any person undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him. The difficult question in all of these cases is to determine precisely what is the trade, business, occupation or profession of the owner. And in this case the question to be determined is to decide the scope of the trade, business, and occupation of Vepco. Was the plaintiff engaged in the trade, business, and occupation of Vepco at the time of his injury? If he was engaged in the trade, business and occupation of Vepco at the time of his injury, then his exclusive remedy for such injuries is workmen's compensation. In the event that he is a stranger to the trade business, and occupation of Vepco, then he is entitled to bring this third party suit.

The Supreme Court of Virginia has followed in its decision the test set down by Professor Arthur Larson in his work, *The Law of Workmen's Compensation*, and therein the test is stated as follows:

> The test is not one of whether the subcontractor's activity is useful, necessary, or even

absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

It appears to me that the trade, business, and occupation of Vepco is to generate power and natural gas. In order to do this it is essential that they have some source of fuel to generate the power. At Dutch Gap one of the sources is coal. Therefore, it is an essential part of their business to move coal from its storage location into the appropriate boilers or heating facilities. In order to do this it is necessary to have equipment that will move the coal from one point to another on the plant. It does not appear to me to make any difference whether they use two or three small pieces of equipment or one large piece of equipment. It is still their trade, business and occupation. It is, therefore, obvious that they must maintain the equipment for the moving of the coal. Therefore, it appears to me that Crump was in fact actively participating in the normal trade, business and occupation. It is, therefore, obvious that they must maintain the equipment for the moving of the coal. Therefore, it appears to me that Crump was in fact actively participating in the normal trade, business and occupation of Vepco when he was on the Hough tractor actively participating in the maintenance of that piece of equipment.

The converse rule to the above is to the effect that if Cummins Virginia, Inc., did not have workmen's compensation, would Vepco have had to provide workmen's compensation for Crump. I think that they would have. And both of these two principles worked hand in hand. Therefore, it is my opinion that the sole remedy that Crump has in this instance is workmen's compensation.